UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DALE HERMAN,<br><br>                       Plaintiff,<br><br>v.<br><br>AARON HAWKINS, *et al*.,<br><br>                    Defendants. | Case No. 25-10924<br>Honorable Terrence G. Berg<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO DENY DEFENDANTS'
SUMMARY JUDGMENT MOTION
(ECF NO. 24)**

## I.      Introduction

Plaintiff Dale Herman, a prisoner proceeding pro se and in forma paupers, sues Michigan Department of Corrections (MDOC) officials under 42 U.S.C. § 1983.  ECF No. 1.  The Honorable Terrence G. Berg dismissed all his claims except his excessive force claims against Defendants Aaron Hawkins, C. Tobar, and S. Mohler.  ECF No. 7.  Judge Berg then referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 15.  Defendants move for summary judgment under Federal Rule of Civil Procedure 56, alleging that Herman failed to exhaust

1

his administrative remedies.  ECF No. 24.  The Court **RECOMMENDS** that defendants' motion be **DENIED.**

## II.     Background

Herman claims that, on a cold day in October 2024, he was forced to wait outside in the "medline" wearing only a t-shirt and pants to get his medication.  ECF No. 1, PageID.2-3.  He says that prison officials gave him no jacket, undershirts, or thermal wear when he arrived at the prison a month earlier.  *Id*.  After over a half-hour of waiting in the cold, Herman entered the building and tried to explain to Mohler why he "cut" the line, but Tobar and Hawkins started yelling at Herman.  *Id*., PageID.3.

Herman asked to speak to a sergeant and Mohler said that the sergeant was in the "chow hall," so Herman turned to leave.  *Id*.  After exiting the building, the three officers grabbed Herman from behind and tackled him to the ground.  *Id.*  With Herman "face down on the ground with hands behind his back, defendant Hawkins allegedly sat on his upper back and neck" while Tobar and Mohler placed handcuffs on him.  *Id*., PageID.3-4.  Herman alleges that the assault caused him a back injury as well as many bruises and abrasions, and that he had to be treated at the Duane Waters Hospital emergency department.  *Id.*, PageID.4.

Hawkins issued Herman a misconduct ticket, describing the violation as Herman "yelling at staff that he would not wait outside for the medication line as it was cold," refusing an order to go back outside, and making "veiled threats."  ECF No. 24-3, PageID.133, 136-137.  Hawkins wrote that he then gave a verbal warning of his intent to restrain Herman.  *Id*.  But Herman turned to leave the building, and Hawkins, Moher, and Tobar stepped outside and placed Herman in restraints.  *Id*.  Herman was then put in segregation.  *Id*.

Herman filed[1] the relevant Step I grievance, which he signed on October 20, 2024, twelve days after the incident.  *Id*., PageID.127.  His allegations in the grievance align with those in his complaint here except in two ways.  First, Herman did not name Hawkins in the grievance, but he referred to Tobar and another "staff member" yelling at him.  Secondly,

---

[1] Under MDOC policy, Herman's grievance and grievance appeals were not "filed" until they are received by the intended MDOC recipient.  *See Bailey v. Washington*, 784 F. Supp. 3d 997, 1011 (E.D. Mich. 2025).  But in *Bailey*, this Court found that "'absent contrary evidence,' a prisoner has filed her grievance documents on the date she signed them."  *Id*. at 1014 (quoting *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008)).  Here, Herman's grievance was signed on October 20, 2024, but not received by the grievance coordinator until three days later.  ECF No. 24-3, PageID.127.

though Herman referred to Mohler, Tabor, and another "staff member" in the grievance, he did not specify who tackled him. *Id.*

Herman's Step I grievance was rejected as untimely, but with no explanation of which deadline he missed. *Id.* In his Step II appeal, he said that he filed his grievance "7 business days after date of incident which was the first day I managed to get a C.O. to give me another grievance form in SMHU." *Id.*, PageID.126. Herman then identified Hawkins as the "staff member" he referred to in his Step I grievance. Herman also said that Hawkins wrote the misconduct ticket mentioned in the grievance," which was "why the grievances can't go to him." *Id.* Herman claimed to have "requested step II forms from G.C. Hawkins on 10/20, 11/1, 11/4" and "11/21," but that he "didn't receive them until 12/3." *Id.*

Though notations at the top of the Step II form show that MDOC received the form, no MDOC official responded. *Id.* Citing the lack of MDOC response at Step II, Herman's Step III appeal was rejected.[2] *Id.,* PageID.125.

---

[2] Though MDOC did not address the Step III rejection in its motion, the Court questions MDOC's reliance on its own failure to respond at Step II to justify rejecting his Step III appeal. To exhaust his administrative remedies under MDOC's Policy Directive 03.02.130, ¶NN, Herman *had to* file a Step III appeal, even if MDOC did not timely respond to his Step II grievance. ECF No. 24-2, PageID.113; *see also Bailey,* 784 F. Supp. 3d at 1015 ("[B]y

### III.   Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant

---

requiring a prisoner to write an appeal without knowing that her grievance was denied or the reason for that decision, the PD allows a respondent to deny a prisoner a meaningful appeal.").  Documents related to two other grievances Herman filed lacked responses Step II, and MDOC upheld the rejection of those grievances at Step III because of the lack of Step II responses.  ECF No. 24-3, PageID.128-129, 138-139.  Using MDOC's failure to provide Step II responses against the prisoner appears to be yet another "machination [to] subvert[ ] the intention of the PLRA for prisoners to have 'an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors.'"  *Bailey*, 784 F. Supp. 3d at 1018 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88-90, 94 (2006)).

satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id*. at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To meet this requirement, an inmate must strictly comply with the grievance process provided by the prison. *Woodford*, 548 U.S. at 93-94. But an inmate need only exhaust those remedies that are actually "available"; if an administrative remedy "is not capable of use to obtain relief," then § 1997e will not act as a barrier to suit. *Ross v. Blake*, 578 U.S. 632, 643 (2016).

"Failure to exhaust administrative remedies is an affirmative defense,

which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). "But a prisoner countering a motion alleging failure to exhaust must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Parks v. Mich. Dep't of Corr.*, No. 20-11673, 2021 WL 3533422, at *3 (E.D. Mich. May 17, 2021), *adopted*, 2021 WL 2820984 (E.D. Mich. July 7, 2021) (cleaned up).

**B.**

MDOC Policy Directive (PD) 03.02.130 (effective Sept. 25, 2023) has a three-step procedure that prisoners must follow to complete the administrative review process and properly exhaust grievances. ECF No. 24-2. The policy requires a prisoner to first try to informally resolve the problem with the allegedly offending staff within two business days of learning about the grievable issue, "*unless prevented by circumstances beyond their control.*" *Id.*, PageID.110, ¶ W (emphasis added). Then, within five days of those informal efforts, the prisoner files with the grievance coordinator a Step I grievance about any unresolved issues. *Id.* The prisoner may then file a Step II grievance appeal within ten business days of receiving the Step I response or, if no response was received,

7

within ten business days after the date the response was due.  *Id.*,

PageID.111, ¶ DD.  The same schedule applies to a Step III appeal—it is

due within ten business days of receiving the Step II response or, if no

response was received, within ten business days after the date the

response was due.  *Id.*, PageID.112, ¶ HH.  Prisoners must appeal their

grievances through Step III and wait until receipt of a Step III response, or

until the response is past due, before suing.

Defendants argue that the relevant grievance about the incident

cannot exhaust Herman's claim against Hawkins because he is not named

in it.  The Court disagrees.

"To satisfy administrative exhaustion, a grievant must provide the

administrative agency with enough information to give 'fair notice' of the

people implicated in the alleged wrongdoing."  *Savoie v. Oliver*, 731 F.

Supp. 3d 862, 872 (E.D. Mich. 2024) (quoting *Burton v. Jones*, 321 F.3d

569, 575 (6th Cir. 2003)).  "Courts in this circuit have repeatedly held that a

grievance that does not identify a prison official by name must at least

include other information identifying the official, such as the official's title or

position or even the facts set forth in the grievance."  *Id.* (cleaned up).

"Thus, the failure to name an individual does not necessarily render

exhaustion inadequate, especially where the grievance gave the MDOC

8

sufficient information to identify the individual or individuals involved."
*Glover v. Rivas*, No. 19-13406, 2025 WL 975396, at *5 (E.D. Mich. Mar. 31, 2025) (cleaned up); *see also Calhoun v. Hill*, No. 07-11613, 2008 WL 4277171, at *3 (E.D. Mich. Sept. 17, 2008) ("[T]he Court may excuse a prisoner's failure to identify by name a particular defendant in a grievance when it is obvious from the facts alleged in the grievance that the defendant was involved.").

MDOC had fair notice that Hawkins was the "staff member" mentioned in Herman's Step I grievance.  Herman named both Tobar and Mohler in his Step I grievance, and Herman noted that he was issued a misconduct ticket for assault and battery and creating a disturbance after the incident.  ECF No. 24-3, PageID.127.  Hawkins wrote the misconduct ticket against Herman, and Mohler and Tobar issued memoranda supporting Hawkins' description of the incident.  *Id.*, PageID.127, 133,136-137.  All three defendants describe Hawkins' participation in restraining Herman.  *Id.*  And Hawkins was on notice about the details of the grievance, as he served as the respondent at Step I.  *Id.*, PageID.127. Hawkins thus had fair notice that he was involved in the incident Herman grieved.

9

And Herman *did* identify Hawkins by name as having been involved in the incident at Step II.  ECF No. 24-3, PageID.126.  that MDOC's policy is 'unclear as to whether a prisoner must name each defendant in his first grievance or before the conclusion of the grievance process.'" *Glover v. Rivas*2025 WL 975396, at *5 (quoting *Coleman v. Rich*, No. 16-1263, 2016 WL 9650985, at *2 (6th Cir. 2016)).

Thus, defendants' argument that Herman's grievance could not exhaust his administrative remedies against Hawkins lacks merit.

### C.

Defendants also argue that Herman's grievance cannot exhaust the excessive force claims against any of them because the grievance was rejected.  "But '[t]he rejection of a grievance is not…the end of the analysis.'"  *Glover v. Rivas*, 2025 WL 975396, at *5.  The Court need not "blindly accept" the state's application of the procedural rule.  *Id.*  And "an improper rejection would constitute exhaustion."  *Bailey v. Mich. Dep't of Corr.*, No. 19-13442, 2020 WL 4934314, at *5 (E.D. Mich. Aug. 24, 2020).  Because failure to exhaust is an affirmative defense, defendants must "show that every reasonable jury would think the rejections were proper" to justify summary judgment.  *Savoie v. Oliver*, 731 F. Supp. 3d at 872.

Herman argues that his Step I grievance was improperly rejected because Hawkins was involved in the incident being grieved and was thus barred from acting as the respondent.  ECF No. 26, PageID.143.  Herman is right that, under the PD, "staff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review, or response, except as necessary to provide information to the respondent."  ECF No. 24-2, PageID.111, ¶ BB.

Defendants note that Hawkins was not named in the grievance and thus argue that he did not violate ¶ BB.  But the Court agrees that Hawkins must have known that he was the "staff member" involved in Herman's restraint and should have refrained from acting as the respondent.  Even so, Herman cites "no authority for his assertion that a violation of that policy directive would excuse him from exhausting his administrative remedies." *Young v. Prison Health Servs.*, No. 16-CV-13016, 2017 WL 9470707, at *3 (E.D. Mich. June 1, 2017), *adopted,* 2017 WL 2793956 (E.D. Mich. June 28, 2017).  And the Court need not determine whether Hawkins' role as the respondent at Step I would excuse any failure to exhaust his administrative remedies because a material factual dispute about whether Herman's grievance was properly rejected remains.

11

The remaining dispute is whether Herman's grievance was properly rejected as untimely.  Under the PD, MDOC may reject an untimely grievance, but the "grievance shall not be rejected if there is a valid reason for the delay: e.g., transfer."  ECF No. 24-2, PageID.109, ¶¶ P(4) and (5).  Herman argues that his grievance should not have been rejected as untimely because was unable to file a grievance while he was in segregation.  ECF No. 26.  In support, Herman submits an affidavit under 28 U.S.C. § 1746 stating that, while he was in segregation, he "attempted numerous times between 10-8-24 and 10-20-24 to get the forms necessary to file grievances…but was either ignored or denied," causing him to miss the filing deadline.  ECF No. 26, PageID.145.  He wrote that, when he received the grievance forms, he "filled them out and turned them in the same day."  *Id*.  A Court may consider an affidavit signed under § 1746 when deciding a motion for summary judgment.  *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002).

Defendants acknowledge Herman's argument that "he was not able to obtain a Step I grievance form for several days and that he submitted the grievance as soon as he received the form."  ECF No. 28, PageID.153.  And they do not deny Herman's claim that he filed his Step I grievance as soon as he could.  Still, defendants contend that Herman

12

cannot challenge the rejection of his Step I grievance as untimely because he failed to do so during the grievance process.  *Id.*, PageID.154-155.

But at Step II, Herman *did* challenge the rejection of his Step I grievance as untimely based on his placement in segregation and his inability to get the necessary grievance forms.   ECF No. 24-3, PageID.126. Herman received no response to his Step II appeal.  *Id*.  Though the top of the form indicates that MDOC officials received the Step II appeal, the space for a response on the form is blank.  *Id*.  Thus, "MDOC's rejection of [the grievance] lacks the requisite clarity necessary to provide a foundation for granting [defendant's] motion for summary judgment."  *Kitchen v. Corizon Health, Inc.*, No. 1:16-CV-190, 2017 WL 8940117, at *11 (W.D. Mich. Nov. 10, 2017), *adopted,* 2018 WL 286425 (W.D. Mich. Jan. 4, 2018), *aff'd in part, rev'd in part on other grounds*, 2021 WL 4470032 (6th Cir. June 23, 2021).

In *Kitchen*, the "Step II response contain[ed] no coherent discussion attempting to engage the question of how plaintiff could have attempted to resolve this issue with [the officer involved] while he was held in quarantine or even a statement that plaintiff failed to make a timely attempt after he was released from quarantine."  *Id.*  And in *Reeves v. Florek*, the court noted that, although "defendants bear the burden of showing that the

13

grievance screener's reasoning for the rejection was proper under the facts," they gave no discernable explanation of why the rejection of a grievance as untimely was improper. No. 24-11653, 2025 WL 2780144, at *3 (E.D. Mich. Sept. 30, 2025).

> [N]either the Step I nor the Step III MDOC response assesses the validity or even acknowledges Reeves's proffered reason for delay. In fact, the MDOC responses do not specify if the disqualifying tardiness stemmed from Reeves delay in attempting to resolve the issue prior to writing the grievance, in submitting the Step I grievance itself, or both. The MDOC defendants have not met their burden of showing that the rejection of Reeves's grievances against A. Florek as untimely was proper.

*Id*. (cleaned up).

Here, the MDOC did not explain the basis for its rejection of Herman's grievance as untimely at Step I; failed to respond at Step II; rejected Herman's Step III appeal without addressing why its Step I rejection was proper; and has not disputed Herman's testimony by affidavit here that he could not file his grievance sooner because he was in segregation. Defendants have altogether failed to meet their burden of showing that their timeliness rejection was proper.

Rather than addressing the factual underpinnings of their rejection of Herman's grievance at Step I, defendants argue that "to preserve the challenge to the Step I untimeliness rejection, Herman needed to challenge

14

that rejection in *both* his Step II appeal and his Step III appeal." ECF No. 28, PageID.155 (emphasis added). They provide no precedential authority to support that assertion, and the published *Savoie* opinion rejected that argument. 731 F. Supp. 3d at 874. The *Savoie* court noted that "MDOC's policy does not say that appeals of grievance denials must challenge the procedural grounds for the denial. On the contrary, it simply states that '[a] grievant whose grievance is rejected may appeal the rejection to the next step as set forth in this policy.'" *Id*. *Savoie* addressed the 2019 version of the PD, but defendants point to no language in the applicable 2023 version that requires the prisoner to challenge the procedural grounds for a rejection during the grievance process.

The *Reeves* court agreed with *Savoie's* holding, and also found that the plaintiff's "challenge to the untimeliness rejection at Step III satisfied the grievance process's purpose by providing prison officials time and opportunity to assess the propriety of the Step I rejection for untimeliness." 2025 WL 2780144, at *2-3. Here too, Herman's challenge to the untimeliness rejection at Step II gave prison officials the time and opportunity to assess whether its Step I rejection was proper.

Though defendants cite no opinion with precedential value, they rely on an unpublished Sixth Circuit order in *Jones v. Bonevelle,* No. 11-2242

15

(6th Cir. Mar. 30, 2012).  ECF No. 28, PageID.154; ECF No. 28-1.  In *Jones*, the court found that the plaintiff's "argument that his grievances were improperly rejected should have been made during the grievance process, not in his present civil rights action."  ECF No. 28-1.  As noted, Herman *did argue* during the grievance process that his Step I grievance was improperly rejected.  And the Sixth Circuit has never held in a published or unpublished opinion that a prisoner must challenge an improper rejection at both Step II and Step III.

Thus, defendants' argument that Herman procedurally defaulted his claim that his grievance was improperly rejected on timeliness grounds should be rejected.

## IV.    Conclusion

The Court **RECOMMENDS** that defendants' motion for summary judgment be **DENIED.**

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: February 5, 2026

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's

findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

17

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 5, 2026.

s/Davon Allen
DAVON ALLEN
Case Manager

Third, a remedy will be deemed unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. It is this third category that comes into play in the present case. "If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action." *Betty v. McKee*, 2019 WL 140194, at *7 (W.D. Mich. Jan. 9, 2019)(citing *Ross v. Blake* ).

Both Williams and Farnsworth allege that Defendant Johnson, who was the subject of their grievances, improperly acted as the Acting Grievance Coordinator under the governing Policy Directive. They are correct as to the mandate of PD 3.02.130(U), which provides:

"Prisoners and staff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review, or response, except as necessary to provide information to the respondent."

In addition, Plaintiffs have alleged fact that, if true, would show that Johnson interfered with their ability to pursue the grievance process to conclusion, thereby rendering the grievance procedure "unavailable" and excusing the PLRA's exhaustion requirement. Failure to comply with a prisoner's request for the appropriate grievance appeal forms can interfere with the ability to exhaust to the extent that the administrative remedy is unavailable within the meaning of *Ross v. Blake. See Young v. Jackson*, 2013 WL 8178397, at *8-9 (E.D. Mich. Nov. 13, 2013), report and recommendation adopted, 2014 WL 42727 (E.D. Mich. Aug. 29, 2014)2014 WL 42727 (E.D. Mich. Aug. 29, 2014)(denying dismissal based on exhaustion, Court finds that defendants "have a duty to follow MDOC policy and provide prisoners with Grievance Appeal forms when so requested");

18

*Graham v. Chicowski*, 2017 WL 3097803, at *4 (E.D. Mich. Apr. 18, 2017), report and recommendation adopted, 2017 WL 3085782 (E.D. Mich. July 20, 2017)(same).

*Farnsworth v. Johnson*, No. 17-10966, 2019 WL 1141075, at *4 (E.D. Mich. Feb. 10, 2019), *report and recommendation adopted,* No. 17-CV-10966, 2019 WL 1125620 (E.D. Mich. Mar. 12, 2019)

<u>DEFINITIONS</u>

A.   <u>Business day</u>:   Monday through Friday excluding State observed holidays.

B.   <u>Respondent</u>:   The staff person who investigates and responds to a grievance.

If a grievant chooses to pursue a grievance that has not been responded to by staff within required time frames, including any extensions granted, the grievant may forward the grievance to the next step of the grievance process within ten business days after the response deadline expired, including any extensions that have been granted.

FF.   A Step I grievance shall be responded to within 15 business days after receipt of the grievance unless an extension is granted pursuant to Paragraph Z.   If the issue is of an emergent nature, the Grievance Coordinator may order a Step I response within two business days.   The Grievance Coordinator may respond at Step I to grievances that require only minimal investigation or are rejected for reasons authorized by this policy.

GG.   The respondent shall interview the grievant to clarify issues of merit, to further an investigation, or otherwise aid in the resolution of the grievance at Step I.   An interview is not required when:

NN.   A grievant may file a Step III grievance if they are dissatisfied with the Step II response or does not receive a timely response.   To file a Step III grievance, the grievant must send a completed Prisoner/Parolee Grievance Appeal form (CSJ-247B) to the Grievance Section, OLA, within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions.   If a pre-Step III procedural error is identified at Step III, the Step III appeal shall not be answered but shall be returned to the appropriate step for an amended response to correct the procedural error. All rights and timeframes for appeal of the amended grievance shall be reset.

The Court finds that, with Herman's affidavit, a reasonable trier of fact could find that his segregation prevented him from timely grieving the alleged excessive force, "prevented by circumstances beyond [his] control" because he was put in segregation after the incident.  *See Reeves v. Florek,* No. 24-11653, 2025 WL 2947016, at *6-7 (E.D. Mich. Apr. 4, 2025).

19